IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



JOSE LERMA,

    Petitioner,

v.                                         Civil Action No. **3:17CV588**

ERIC WILSON,

    Respondent.

## REPORT AND RECOMMENDATION

Jose Lerma, a federal inmate proceeding *pro se*, filed this petition under 28 U.S.C. § 2241[1] ("§ 2241 Petition," ECF No. 1) challenging his conviction of an institutional infraction and the resulting loss of forty-one days of good conduct credit. (*Id.* ¶¶ 13, 15.) Respondent moves to dismiss, or in the alternative, moves for summary judgment on the ground that Lerma's challenge to his conviction lacks merit. (ECF Nos. 7, 8.) Lerma has responded. (ECF No. 10.)

By Memorandum Order entered on May 4, 2018, the Court directed Respondent to file a supplemental brief and evidence that addressed or supplied the following:

    1.    Any further evidence beyond what has already been submitted to the Court, that Respondent used to find that Petitioner was guilty of the institutional infraction.

---

[1] That statute provides, in pertinent part:

    (c) The writ of habeas corpus shall not extend to a prisoner unless—
    (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
    (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
    (3) He is in custody in violation of the Constitution or laws or treaties of the United States . . . .

28 U.S.C. § 2241(c)(1)–(3).

> 2. Whether or not Petitioner's cell mate was charged and convicted of the institutional infraction and, if he was not charged or convicted, an explanation of why this is so.
> 3. Respondent also must provide further argument and case law that adequately supports his position that, under these circumstances, some evidence existed sufficient to find Petitioner guilty of the institutional charge, and supports his contention that Petitioner constructively possessed the contraband.

(ECF No. 14, at 1–2.) Respondent filed his supplemental brief and evidence. (ECF No. 15.) The matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). Although the supplemental briefing is of limited utility, for the reasons that follow, it is RECOMMENDED that the Motion for Summary Judgment be GRANTED, the Motion to Dismiss be DENIED as moot, and the § 2241 Petition be DENIED.

### A. Standard for a Motion for Summary

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the *onus* of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."). In support of his Motion for Summary Judgment, Respondent submits: (1) a declaration of Michael Lockridge, a Senior Attorney at the Federal Correctional Complex in Butner, North Carolina ("Lockridge Aff.," ECF No. 8-1, at 1-3); (2) a Public Information Inmate Data report for Lerma (*id.* at 5-7); (3) an Incident Report (*id.* at 9-11); (4) a Medication Identification Request (*id.* at 13); (5) a Notice of Discipline Hearing Before the DHO form (*id.* at 15); (6) an Inmate Rights at Discipline Hearing form (*id.* at 17); and (7) a Discipline Hearing Officer ("DHO") Report (*id.* at 19-21.)[2]

At this stage, the Court is tasked with assessing whether Petitioner "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his

---

[2] The Court employs the pagination assigned to the various institutional records by the CM/ECF docketing system. The Court corrects the capitalization in the quotations from Lerma's submissions.

3

claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. As required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Lerma was advised of his right to respond to Respondent's motion. (ECF No. 9.) While Lerma filed an unsworn response to the Motion for Summary Judgment, Lerma failed to submit affidavits, sworn statements, or any other evidence. Lerma, however, did swear under penalty to the contents of his § 2241 Petition.[3]

In light of the foregoing principles and submissions, the following facts are established for purposes of the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Lerma.

**B.     Summary of Pertinent Facts**

Lerma is currently serving a 120-month sentence imposed by the United States District Court for the Northern District of Ohio on August 14, 2012 for a drug-related offense. (Lockridge Aff. ¶ 4.) The institutional conviction at issue occurred when Lerma was incarcerated in the Federal Correctional Center in Milan, Michigan ("FCI Milan"); however, Lerma was incarcerated at the Federal Correctional Complex in Petersburg, Virginia ("FCC Petersburg") at the time he initiated this action. (*Id.* ¶¶ 4–5.) On October 20, 2016, staff at FCI Milan conducted a search of C Unit cell number 216, the cell assigned to Lerma and to one other prisoner. (ECF No. 8–1, at 9, 19–20.) The officer who conducted the search explained: "I removed the toilet paper holder arms from the wall. Inside one of the arms was a large piece of toilet paper. I removed the toilet paper and found 2 orange strips of paper stamped with 'N8.'

---

[3] Despite swearing to his § 2241 Petition, Lerma fails to direct the Court to any evidence that he wishes the Court to consider in opposition to the Motion for Summary Judgment. *See* Rule Fed. R. Civ. P. 56(c)(3) (explaining that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment).

4

The strips were identified by Chief Pharmacist Mr. Waite as Suboxone." (*Id.*) That same day, the officer at FCI Milan filed an incident report charging Lerma with Possession of any Narcotics, in violation of BOP Prohibited Act Code 113, and the incident report was delivered by staff to Lerma. (*Id.*) Code 113 prohibits "[p]ossession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff." (Mem. Supp. Mot. Summ. J. 3 n.1 (alteration in original) (quoting 28 C.F.R. § 541.3 (Table 1).) Lerma was notified that the matter was being referred to a DHO for a hearing, and he received notice of his rights at the hearing. (ECF No. 8–1, at 11, 15, 17.)

For his November 2, 2016 disciplinary hearing, Lerma did not request a staff representative or any witnesses for the hearing and did not offer any documentary evidence. (*Id.* at 15, 19.) During the hearing, Lerma admitted to living in cell 216; however, he denied that the drugs belonged to him and indicated that he was out of the facility on a medical trip at the time of the search. (*Id.* at 20.) Lerma also stated that, "you gotta have a special tool to open [the toilet paper dispenser]. It's screwed into the wall." (*Id.* at 19.) Records established that Lerma had lived in cell 216 from September 14, 2015 until the date the drugs were found on October 20, 2016, and that his cellmate had only lived in the cell since October 14, 2016. (*Id.* at 20.) The DHO considered the drug analysis memorandum that indicated that the orange strips marked with "N8" were Suboxone, a drug that is not stocked or used at FCI Milan. (*Id.*) The DHO also considered photographs that depicted the metal side arms of the toilet paper dispenser with white paper stuffed inside and other photographs including those depicting the paper removed and opened, revealing the orange strips marked "N8." (*Id.*) The DHO sentenced Lerma to, *inter alia*, forty-one days disallowance of good conduct time. (*Id.* at 21.) As justification for the charge, conviction, and sentence, the DHO's report explained the following:

5

> After careful consideration, the DHO found you committed the prohibited act of Code 113, Possession of any drug not prescribed for the individual by medical staff, based on the greater weight of the evidence as presented above. Specifically, section 11 of the incident report where staff documented while the reporting officer was conducting a search of your cell, the reporting officer removed the toilet paper holder arms from the wall. Inside one of the arms was a large piece of toilet paper. The reporting officer removed the toilet paper and found 2 orange strips of paper stamped with "N8." The strips were identified by medical staff as Suboxone. You are assigned to [t]his cell on the lower bunk the location in which these strips were found is located inside your cell. The DHO considered that you had a cellmate Scofield in this cell with you. The DHO considered . . . your denial of the charge and your claim that the suboxone was not your[s]; however, the Suboxone was found in your cell when the reporting officer removed the toilet paper holder arms. The DHO considered your claim that you have to have a special tool to do that; however, the DHO advised that inmates make several types of tools from common items they have in their possession in a correctional environment. The DHO considered your claim that you were on a medical trip on this day of the incident; to which the DHO does agree that you were on the medical trip and arrived back just before the reporting officer found the Suboxone. The DHO considered your claim that it is not yours; however, upon checking sentry data you have been assigned to this cell for over a year prior to the Suboxone being found and that your cellmate had been assigned to this cell for less than a week. Therefore, greater weight was given to the statement of the reporting staff member. There is some evidence to support that you were in possession of any drug not prescribed for the individual by medical staff, based upon the reporting officers documented report, supporting memorandum, photographs, sentry data, and the greater weight of the evidence; all shows you committed the prohibited act.

(*Id.* at 20.)

Lerma's cellmate, Shawn Scofield, also was charged with Possession of any Narcotics, in violation of BOP Prohibited Act Code 113, as a result of the Suboxone found in the cell. (Supp'l Brief 3.) At Scofield's DHO hearing, Scofield denied the charge, indicated that he had no knowledge of the contraband, and stated that he had only arrived at FCI Milan six days earlier. BOP staff confirmed that Scofield had arrived at the prison six days earlier and therefore had been housed in Cell No. 216 for no more than six days. (*Id.* (citing ECF No. 8–1, at 20.)) After considering Scofield's statement and the fact that he had only been housed in the cell for six

days, the DHO found insufficient evidence to find that Scofield had committed the prohibited act. (*Id.* at 4.)

C.  Analysis

In Lerma's sole claim, he argues that "the Federal Bureau of Prisons wrongfully found [him] guilty of a prohibited act and must restore disallowed 41 good conduct days." (§ 2241 Pet. 6.) Lerma first argues that his conviction is invalid because of a typographical error at the top of the Discipline Report which stated, "113 Use of any Drugs or Alcohol;" however, he was found guilty of "Possession of . . . NOT Use of as written." (*Id.* at 7.) Despite the charge being listed as "Use of" instead of "Possession of," the Court fails to discern how this invalidates Lerma's conviction. Prior to the DHO hearing, Lerma was provided with the Incident Report and the Notice of Hearing that both clearly indicated that he was charged with "Possession of any Narcotics." (*See* ECF No. 8-1, at 9, 15.) The DHO also explained that Lerma was guilty of the prohibited act of "Code 113, Possession of any drug not prescribed for the individual by medical staff." (*Id.* at 20.) Any misstatement at the top of the Discipline Hearing Officer Report does not make his conviction invalid, as Lerma was clearly aware of the correct charge.

Lerma also presumably contends that insufficient evidence existed to find him guilty of the institutional conviction. Lerma first points to the fact that the drugs were found in the common area of the cell and then argues that, because he was not in the cell at the time of the search, he was "obviously not in control of the cell." (§ 2241 Pet. 8.) Lerma next argues that his cellmate has had prior possession of drug/alcohol convictions and that Lerma has had none. (*Id.*) Lerma faults FCI Milan staff for not conducting a proper investigation, including fingerprinting the drugs or looking into his cellmate's history. (*Id.*) Lerma contends: "It should be painfully

7

obvious that there is more than a modicam [sic] of reasonable doubt here." (*Id.*) Lerma states, "I am not guilty of this violation and should be made whole." (*Id.*)

When an inmate files a habeas petition to challenge the sufficiency of the evidence underlying the revocation of good conduct credits, due process simply requires that "the findings of the prison disciplinary board are supported by some evidence in the record." *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56 (citing *United States ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927)). Under BOP Program Statement 5270.09, Lerma had a responsibility to keep his cell "free of contraband." (Supp'l Br. 3 (citation omitted).) It is undisputed that Lerma was in violation of this policy, leading to his incident report. Respondent asserts that because the drugs were found in Lerma's cell and Lerma shared his cell with only one other inmate, the DHO's finding that Lerma violated Code 113 was supported by sufficient evidence under the rule of constructive possession. (Mem. Supp. Mot. Summ. J. 6.)

As the United States Court of Appeals for the Fourth Circuit has explained, "[c]onstructive possession provides 'some evidence' of guilt only when relatively few inmates have access to the area." *McClung v. Shearin*, 90 F. App'x 444, 446 (4th Cir. 2004) ("*McClung I*") (citing *Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001)). Here, the drugs were found in the cell that Lerma shared with one other inmate. Because the drugs were found in a cell that was the "exclusive domain" of Lerma and his cellmate, the constructive possession rule provides "some evidence" of guilt, and that evidence is sufficient to sustain Lerma's disciplinary hearing.

*McClung v. Hollingsworth*, No. 06–6699, 2007 WL 1225946, at *3 (4th Cir. Apr. 26, 2007); *see Santiago v. Nash*, 224 F. App'x 175, 177 (3rd Cir. 2007) (citation omitted) (finding that contraband taped to inmate's bed was sufficient evidence where only a "small number of inmates are potentially guilty of the offense charged").

For the first time in his Response and as a reaction to Respondent's citation of the *McClung* case, Lerma states: "The Petitioner brought up that the cell was unlocked and others had access, but more importantly, and as the DHO report shows and supports, the other cell occupant was not charged nor convicted, where, as here, when ownership can not be determined, *all* occupants of the cell are *equally* responsible." (Resp. 5, ECF No. 10.) First, Lerma's attempt to align the facts in his case with those presented in *McClung* is misplaced. In *McClung I*,

> prison officials found McClung guilty of possession of a dangerous weapon. *McClung I*, 90 F. App'x at 445. "The Hearing Officer relied on the following as evidence of McClung's guilt: (1) the fact that a sharpened instrument was found in McClung's living area and (2) the prison's rule of 'constructive possession' which states that '[w]hen positive ownership can not be determined, all occupants of the cell are equally responsible.'" *Id.* at 446 (alteration in original). McClung asserted the doctrine of constructive possession should not apply because "his cell was unlocked and, therefore, accessible by other inmates." *Id.* The Fourth Circuit concluded that, if "McClung's cell was accessible by 130 inmates [(as McClung claimed)], we find that there was insufficient evidence to connect him to the weapon." *Id.* The Fourth Circuit explained, "Constructive possession provides 'some evidence' of guilt only when relatively few inmates have access to the area." *Id.* (citing *Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001); *Hamilton v. O'Leary*, 976 F.2d 341, 345–46 (7th Cir. 1992)). The Fourth Circuit remanded the matter to the district court for further proceedings. *Id.*

*Delgado v. Wilson*, No. 3:11CV165, 2011 WL 6750768, at *2 (E.D. Va. Dec. 23, 2011) (alterations in original). The Fourth Circuit noted, however:

> McClung stated, when he was given his incident report, that his cell was unlocked, and, therefore, accessible by other inmates. In his informal brief, he states that the number of inmates with access to his cell was 130. McClung has consistently repeated these assertions throughout both his administrative appeals and the instant action. If indeed McClung's cell was accessible by 130 inmates, we find there was insufficient evidence to connect him to the weapon.

9

*McClung*, 90 F. App'x at 446. Unlike in *McClung*, Lerma suggests for the first time that his "cell was unlocked and others had access" in his unsworn Response to the Motion for Summary Judgment. (Resp. 5.) Lerma provides no admissible evidence that inmates other than his cellmate and himself had access to his cell or that he consistently made this argument throughout his disciplinary proceedings. *See Hamilton*, 976 F.2d at 343–45 (finding constructive possession supported conviction where evidence presented to discipline committee was that four cellmates occupied and controlled cell where weapon was found in vent despite inmate's later argument that 32 inmates had access to vent).[4] Rather, Lerma's argument throughout the institutional proceedings, his appeal, and in the instant § 2241 Petition has consistently been that the drugs must belong to his cellmate because his cellmate had prior institutional convictions for contraband and he had none. (*See* ECF No. 1-1, at 6–7, 9.) Lerma also argued that he was not there the day of the search, that he had no drugs in his system, and that his cellmate had been there less than a week. (ECF No. 1-3, at 3.) Lerma's conclusory allegation that his "cell was unlocked and others had access" made at this late juncture fails to create a genuine issue as to whether "some evidence" existed that Lerma possessed the drugs.

Second, Lerma suggests that the doctrine of constructive possession is inapplicable because his cellmate was not charged or convicted for the offense. Lerma states: "Thus, since the other occupant of the cell was not charged nor convicted upon the same 'some evidence'

---

[4] In contrast, like in *McClung*, courts have found constructive possession was insufficient to serve as "some evidence" when hundreds of inmates have access to the area where contraband was found. *See Broussard*, 253 F.3d at 877 (finding that when the only evidence linking inmate to contraband was "that they were found in an area in which he worked, but to which approximately one hundred inmates had access," this evidence was insufficient to satisfy the "some evidence" standard); *Delgado*, 2011 WL 6750768, at *3 (finding record was insufficient for doctrine of constructive possession to provide necessary evidence for conviction where contraband was found in area accessible to 150 inmates).

standard, then neither can the Petitioner Mr. Lerma." (Resp. 5.)[5] However, Lerma offers no persuasive authority to support that proposition and the Court fails to discern why the doctrine of constructive possession would require that both cellmates who exercise joint control over the cell must be charged and convicted.[6] To the contrary, even in cases where one cellmate accepts full responsibility for contraband discovered in a shared cell, the institution is not precluded from also finding the non-confessing cellmate guilty based on the doctrine of constructive possession. *See Rojas-Parra v. Warden, FCI Bennettsville*, No. 1:13-1581-TMC, 2014 WL 2548352, at *6 (D.S.C. June 6, 2014) (citations omitted). Lerma fails to demonstrate that the DHO's decision does not meet the "some evidence" standard. *See Hill*, 472 U.S. at 455-57 (1985) (explaining that even evidence "characterized as meager" satisfies the "some evidence" standard). Accordingly, it is RECOMMENDED that the Motion for Summary Judgment (ECF No. 7) be

---

[5] While Lerma repeatedly states that his cellmate was not charged, this is simply not true. Lerma's cellmate, Scofield, also was charged with possession of the drugs found in cell. After hearing Scofield's denial of guilt and considering the other circumstances, prison officials declined to find Scofield guilty.

[6] Although there is "some evidence" to suggest Petitioner's constructive possession of the controlled substance at issue, the Court would be remiss not to comment further on the optics of the conviction of the Petitioner for the institutional infraction and the acquittal of his cellmate, Scofield for the same. In reviewing the record at hand, it appears that the evidence that points to Petitioner's guilt also points to Scofield's guilt as well. Namely, there is no evidence in the record that shows that controlled substances had been discovered in Petitioner's cell prior to the arrival of Scofield. The controlled substances were found in a common area of the cell, an area to which both Petitioner and Scofield had access. Although Scofield had only been a resident of cell 216 for six days, Scofield, like Petitioner, had the obligation to keep the jail cell free of contraband. The record reflects that Scofield had prior conviction(s) for controlled substance offenses whereas the Petitioner had no convictions for controlled substance offenses. Hence it is patently obvious to this Court that there is "some evidence" that Scofield constructively possessed the controlled substances at issue, either jointly with, or apart from Petitioner. However, whether or not Scofield could also be guilty fails to alter the fact that, under the doctrine of constructive possession, "some evidence" existed that Lerma possessed the drugs. Rather, "at issue in this case is whether there is some evidence to support a disciplinary hearing officer's decision, not whether [Lerma's] cellmate [also] should have been disciplined . . . ." *Coleman v. Superintendent*, No. 1:14-CV-648-TWP-DKL, 2015 WL 5638214, at *2 (S.D. Ind. Sept. 23, 2015).

GRANTED, the Motion to Dismiss (ECF No. 6) be DENIED AS MOOT, that Lerma's § 2241 Petition be DENIED, and that Lerma's claim and the action be DISMISSED.

**C.     Conclusion**

Lerma is advised that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Such objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. *See* Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation may result in the dismissal of his claims, and it may also preclude further review or appeal from such judgment. *See Carr v. Hutto*, 737 F.2d 433, 434 (4th Cir. 1984).

The Clerk is DIRECTED to send a copy of this Report and Recommendation to Lerma and counsel of record.

It is so ORDERED.

/s/ [signature]
Roderick C. Young
United States Magistrate Judge

Date: June 1, 2018
Richmond, Virginia